Filed 10/17/24  P. v. Valdivia-Guzman CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G062516 |
| v. | (Super. Ct. No. 10HF1962) |
| ZENAIDO VALDIVIA-GUZMAN, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Sheila F. Hanson, Judge. Reversed with directions.

Eric R. Larson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin

Urbanski, Kathryn A. Kirschbaum and Donald W. Ostertag, Deputy Attorneys General, for Plaintiff and Respondent.

*     *     *

After a jury convicted Zenaido Valdivia-Guzman of first degree murder, he was sentenced to life in prison. He contends his murder conviction must be reversed because the prosecutor improperly excluded a prospective Hispanic juror in violation of Code of Civil Procedure section 231.7[1] and his constitutional rights under *Wheeler/Batson*.[2] As explained below, we conclude the trial court erred in overruling his objection to the peremptory challenge because no substantial evidence in the record supports the prosecutor's proffered reasons for exercising the peremptory challenge. Accordingly, we reverse and remand for a new trial.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On November 15, 2022, a jury found Valdivia-Guzman guilty of first degree murder, and found true the allegation that the murder was committed during the commission of a kidnapping.

The trial court sentenced Valdivia-Guzman to life in prison without the possibility of parole. The court imposed, but stayed various fines and assessments.

Valdivia-Guzman timely appealed.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise stated.

[2] *People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*); *Batson v. Kentucky* (1986) 476 U.S. 79 (*Batson*).

## DISCUSSION

Valdivia-Guzman contends the trial court erred in permitting the prosecutor to exercise a peremptory challenge to Prospective Juror Number 108 over his section 231.7 objection.

### I.

### VOIR DIRE

During voir dire, when the trial court asked the prospective jurors whether they would have difficulty or concern evaluating a witness's credibility based on the witness's occupation, race or ethnicity, or lifestyle, Prospective Juror Number 108 stated she "tended to be softer towards Hispanics" and "can be biased toward Hispanics." After the trial court asked her whether she would be able to set aside her bias to "assess the credibility of every witness using the same standards," Prospective Juror Number 108 answered, "Yes."

During defense counsel's questioning, Prospective Juror Number 108 explained she was "more biased towards Hispanics in general" because of her family and upbringing. However, she affirmed she would "follow the law." During the prosecutor's questioning, Prospective Juror Number 108 reaffirmed she had "some sympathy or empathy" towards Hispanics based on her family and upbringing. When asked whether it would be more difficult for her to make a decision about the defendant or if it would be "just the same as anybody else" she answered, "the same."

The prosecutor moved to excuse Prospective Juror Number 108 for cause, arguing, "I know she's not saying the magic word, the 'I can't be fair,' but I feel like based on the totality of all of her answers, that she's not . . . able to be a fair juror for this case." The trial court expressed concern about Prospective Juror Number 108's stated bias, but appropriately

3

acknowledged biases are not themselves disqualifying. The court then denied the prosecutor's request to excuse her for cause because "[s]he did ultimately say she would follow the law."

Subsequently, the prosecutor used his first peremptory challenge to excuse Prospective Juror Number 108. After the defense objected under section 231.7, the following discussion ensued:

"The Court: . . . [T]he Defense is raising an objection. "[Prosecutor], you may state your reasons why you are exercising the peremptory challenge.

"[Prosecutor]: Your Honor, I've – I'll reiterate that this morning when the court began to question [Prospective Juror Number] 108, if not the very first thing out of her mouth, the second thing out of her mouth – and it might have been the very first thing out of her mouth – was I have a bias, either for or against Hispanics. And it wasn't in response to a question posed by the court, the form that's been given to the jurors, or by the prosecution.

"So it was clearly something that this individual felt was so important to them that they would say it immediately and unprompted.

"That causes the People concern that the juror can't sit as a fair juror and won't be willing to listen to some of the evidence, and won't be able to separate her sympathy or empathy that she then later discussed in the afternoon when the People began questioning her.

"When the People questioned her in the afternoon, her responses were very quiet and very much one-word answers. I believe I had to ask her to repeat almost every single [answer], and it didn't appear that for all of those reasons as well as her body demeanor and not wanting to provide answers on top of it, that the People felt that she was only parroting what she had heard the court say earlier which is, you've got to eliminate bias to be a

4

juror, but that her actual answers and opinions differed from that. And the People feel that she would not be a fair juror."

Before hearing defense counsel's argument, the court noted for the record that the defendant was a male Hispanic, the victim a female Black, and the witnesses were Hispanic and Caucasian. Defense counsel then argued the following:

"Actually, your Honor, she had excellent eye contact and attentiveness and body language with [the prosecutor]. . . .

"She said she would vote beyond a reasonable doubt if he found – if he presented enough evidence beyond a reasonable doubt. She agreed that the law protects the [victim] as well as the law protecting her.

"She was – actually she responded quite quickly to your Honor's questions this morning, and my recollection is that your Honor was talking about bias, prejudice, or sympathy or something like that, and that's when she volunteered it.

"When your Honor explained it to her, she clarified, and her response or feeling empathy for that particular group because she is a female Hispanic, it's – to me, it's something that maybe usually goes unsaid but I think that's – that's – that's common. That's – it's not so unusual for her to have brought that up."

Defense counsel concluded that Prospective Juror Number 108 "didn't display any sort of unfriendly demeanor or body language towards [the prosecutor] at all."

When the court asked defense counsel why she believed the prosecutor was exercising the peremptory challenge to excuse Prospective Juror Number 108, she answered: "Because she's Hispanic, and she feels sympathy for Hispanics. She's articulated that she feels empathy, but she's

saying she's going to fulfill her job duties in this case. So it's essentially the exact reason that that particular code section, 231.7, has been implemented."

The prosecutor responded: "[T]he People are concerned, again, not about her race. About her comment to the judge, unprompted, that she has a bias and that that – and that that – when explained further, you know, played into sympathy which is something jurors are not supposed to factor in bias and sympathy. So it's based upon that, not her being Hispanic."

The trial court overruled defense counsel's objection to the peremptory challenge. The court explained: "Throughout her question[ing], she described feeling more bias towards Hispanics, and then she described it as being sympathetic.

"She said she'd follow the law, and that's why I indicated I had concerns about exercising – or granting the People's challenge for cause, and I had concerns because there were aspects as described by [the prosecutor] that I find to accurately describe her responses that cause me concern, but I didn't believe it rises to the level of cause.

"And so I denied the challenge for cause, but in terms of evaluating the opinions offered by [the prosecutor] and her responses to the questions that we asked, I do find that his proffered reason is credible and that I do not believe that there's a substantial likelihood that an objectively reasonable person would view her membership or her as a female Hispanic as a factor in exercising the challenge for cause.

"There are certain obvious proffered reasons that are presumptively invalid. He has not indicated one of them, and I find it credible and I will overrule the defense objection to the excusing of Juror Number 108 in violation of [section] 231.7 and Juror Number 108 will be excused.

6

"And I do agree with [the prosecutor's] description about her manner in which she answered those questions."

Defense counsel then put into the record that she disagreed with the court's finding on demeanor, stating, "She did look at him, she was polite and courteous with him. I don't think she displayed any sort of inattention or eye contact or bad attitude towards him." The court responded: "It wasn't a matter of bad attitude. That's not what [the prosecutor] offered as any reason[ ]. But she was hesitant in answering questions . . . . I can only accept the proffered reasons of [the prosecutor], and I found that those proffered reasons were accurate and were credible and matched my observations of her and her answers." Defense counsel reiterated she disputed the demeanor finding and also disputed that the prospective juror was hesitant in answering questions.

After the parties exercised all their peremptory challenges, the court noted the racial composition of the 12 jurors accepted by the parties as: four Hispanics, four Caucasians, two Asians, one Asian Indian, and one Filipino or Pacific Islander.

## II.

### SECTION 231.7

Section 231.7 prohibits the use of "a peremptory challenge to remove a prospective juror on the basis of the prospective juror's race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or the perceived membership of the prospective juror in any of those groups." (§ 231.7, subd. (a).) If a party or the trial court objects to the use of a peremptory challenge, "the party exercising the peremptory challenge shall state the reasons the peremptory challenge has been exercised." (§ 231.7, subd. (c).) The trial court then "evaluate[s] the reasons

7

given to justify the peremptory challenge in light of the totality of the circumstances. The court shall consider only the reasons actually given and shall not speculate on, or assume the existence of, other possible justifications for the use of the peremptory challenge." (§ 231.7, subd. (d)(1).)

Section 231.7 "contains two separate provisions (subds. (e) and (g)) describing presumptively invalid reasons for the exercise of a peremptory challenge. Each subdivision sets out a distinct process by which a court determines whether a presumptively invalid reason can be absolved of that presumption. (*Id.*, subds. (e), (f), (g)(2).)" (*People v. Ortiz* (2023) 96 Cal.App.5th 768, 793 (*Ortiz*).)  The 13 reasons enumerated in section 231.7, subdivision (e) are invalid unless rebutted "by clear and convincing evidence that an objectively reasonable person would view the rationale as unrelated to a prospective juror's race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or perceived membership in any of those groups, and that the reasons articulated bear on the prospective juror's ability to be fair and impartial in the case." (§ 231.7, subd. (e).)

Section 231.7, subdivision (g) provides three listed reasons that "have historically been associated with improper discrimination in jury selection." (§ 231.7, subd. (g)(1).) "The reasons under subdivision (g) involve a prospective juror's demeanor, behavior, or manner: 'The prospective juror was inattentive, or staring or failing to make eye contact' (*id.*, subd. (g)(1)(A)), '[t]he prospective juror exhibited either a lack of rapport or problematic attitude, body language, or demeanor' (*id.*, subd. (g)(1)(B)), and '[t]he prospective juror provided unintelligent or confused answers' (*id.*, subd. (g)(1)(C))." (*Ortiz, supr*a, 96 Cal.App.5th at p. 794.) The reasons listed in section 231.7, subdivision (g)(1)(A)–(C) "are presumptively invalid unless the

8

trial court is able to *confirm* that the asserted behavior occurred, based on the court's own observations or the observations of counsel for the objecting party. Even with that confirmation, the counsel offering the reason shall *explain* why the asserted demeanor, behavior, or manner in which the prospective juror answered questions matters to the case to be tried." (*Id.*, subd. (g)(2), italics added; see *People v. Uriostegui* (2024) 101 Cal.App.5th 271, 275 [a party may not exercise a peremptory challenge based on a presumptively invalid reason "[a]bsent reasons articulated by the party exercising the peremptory challenge that bear on the prospective juror's ability to be fair and impartial and concern the case to be tried, and without corresponding express findings by the trial court"].)

Finally, under section 231.7, subdivision (d), reasons that are not presumptively invalid are evaluated under a substantial likelihood standard from the perspective of an objectively reasonable person. (§ 231.7, subd. (d)(1).) The phrase "'substantial likelihood' means more than a mere possibility but less than a standard of more likely than not." (*Id.*, subd. (d)(2)(B).) "[A]n objectively reasonable person is aware that unconscious bias, in addition to purposeful discrimination, have resulted in the unfair exclusion of potential jurors in the State of California." (*Id.*, subd. (d)(2)(A).) The term "'unconscious bias' includes implicit and institutional biases.'" (*Id.*, subd. (d)(2)(C).) In determining whether a substantial likelihood exists under subdivision (d), the trial court may consider several nonexhaustive factors, including, whether the stated reason for the "peremptory challenge was contrary to or unsupported by the record." (§231.7, subd. (d)(3)(F).)

On appeal, the overruling of an objection under section 231.7 is reviewed de novo "with the trial court's express factual findings reviewed for substantial evidence." (§ 231.7, subd. (j).) The appellate court is to consider

only those reasons actually given by the trial court and may "not speculate as to or consider reasons that were not given to explain either the party's use of the peremptory challenge or the party's failure to challenge similarly situated jurors who are not members of the same cognizable group as the challenged juror, regardless of whether the moving party made a comparative analysis argument in the trial court." (*Ibid.*) If the appellate court concludes the trial court erred by overruling an objection, "that error shall be deemed prejudicial, the judgment shall be reversed, and the case remanded for a new trial." (*Ibid.*)

## III.

### ANALYSIS

Here, the prosecutor proffered two reasons for his peremptory challenge to Prospective Juror Number 108. First, the prosecutor was concerned the prospective juror would not be a "fair juror and won't be willing to listen to some of the evidence, and won't be able to separate her sympathy or empathy" because she stated she was biased in favor of Hispanics. Her statement of bias was "if not the very first thing out of her mouth, the second thing out of her mouth." Additionally, "it wasn't in response to a question posed by the court, the form that's been given to the jurors, or by the prosecution. [¶] So it was clearly something that this individual felt was so important to them that they would say it immediately and unprompted." Second, her demeanor and the manner in which she responded to the prosecutor's questioning indicated she would not be able to be a fair juror, notwithstanding her assertion she would follow the law. The prosecutor stated: "When the People questioned her in the afternoon, her responses were very quiet and very much one-word answers. I believe I had to ask her to repeat almost every single question, and it didn't appear that for all of those

10

reasons as well as her body demeanor and not wanting to provide answers on top of it, that the People felt that she was only parroting what she had heard the court say earlier which is, you've got to eliminate bias to be a juror, but that her actual answers and opinions differed from that."

The prosecutor's second reason is presumptively invalid under section 231.7, subdivision (g) because it involves the prospective juror's demeanor or manner in answering the prosecutor's questions. To rebut the presumption of invalidity, the trial court must confirm the demeanor or manner, and the prosecutor must explain how the demeanor or manner "matters to the case to be tried." (§ 231.7, subd. (g)(2).) The prosecutor's explanation here—that the prospective juror's demeanor and manner indicate she did not actually intend to follow the law—would satisfy the requirements of the statute if trial court's confirmation finding is supported by the record. (See *Ortiz*, s*upra*, 96 Cal.App.5th at p. 801 [trial court's confirmation finding reviewed for substantial evidence].) However, a careful review of the record does not support the confirmation finding. The record does not show the prospective juror was hesitant to "provide answers." Although she gave some one-word answers, those responses were appropriate to the questions, and more importantly, most of her responses were not one-word answers. The prosecutor did not repeat his questions. He asked the prospective juror to repeat her answer on two occasions, but the transcript shows she repeated the same answer, indicating that it was the prosecutor who did not hear the answer, was confused, or wanted clarity.  As for speaking quietly, the record does not show whether the prospective juror was speaking quietly. In any case, it is unclear why speaking quietly would indicate the prospective juror would not follow the law, and the prosecutor offered no explanation. Finally, as to the prospective juror's "body demeanor,"

11

the prosecutor failed to specify the body demeanor (such as being hunched over, having nervous tics, etc.), and thus, the record cannot support an unspecified fact.

In sum, the trial court's confirmation finding is not supported by substantial evidence in the record. Thus, we must set aside the prosecutor's proffered reason that the prospective juror's demeanor and manner of answering questions indicated she would not be a fair juror.

The sole remaining reason for excusing the prospective juror is that her "immediate[ ] and unprompted" bias statement indicates her bias was overwhelming and she would not be able to set aside her bias. However, no substantial evidence supports the claim that her bias statement was "unprompted." The record indicates she made the statement in response to the trial court's question about whether she could assess witness credibility fairly and impartially. The immediacy of her statement merely reflects her prompt response to the court's question and does not suggest her bias was "so important" to her that it would prevent her from fulfilling her duties as a juror. Thus, this reason does not support the exercise of the peremptory challenge.

## CONCLUSION

The prosecutor's proffered reasons for exercising a peremptory challenge to excuse Prospective Juror Number 108 are not supported by substantial evidence. Without any valid reason to exercise the peremptory challenge, the trial court erred by overruling defense counsel's objection under section 231.7. Because this error is "deemed prejudicial, the judgment [must] be reversed, and the case remanded for a new trial." (§ 231.7, subd. (j).) Valdivia-Guzman's remaining arguments on appeal are moot.

12

## DISPOSITION

The judgment is reversed and the case is remanded for a new trial.


DELANEY, J.


WE CONCUR:


MOORE, ACTING P. J.


SANCHEZ, J.

13